IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ARTHUR HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:05-CV-452 |
| | § | |
| ALCATEL USA RESOURCES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S
MOTION AND AMENDED MOTION FOR JUDGMENT ON THE PLEADINGS**

The following motions and responses are pending before the court:

1. Plaintiff's motion to remand and brief in support (docket entry #6);

2. Defendant's response in opposition to Plaintiff's motion to remand and brief in support (docket entry #9);

3. Plaintiff's reply to Defendant's response to motion to remand and brief in support (docket entry #12);

4. Defendant's motion for judgment on the pleadings (docket entry #10);

5. Defendant's amended motion for judgment on the pleadings (docket entry #11);

6. Plaintiff's response to motion for judgment on the pleadings and brief in support (docket entry #15); and

7. Defendant's reply supporting its motion for judgment on the pleadings (docket entry #18).

For the reasons stated herein, the court **DENIES** the Plaintiff's motion to remand, **GRANTS** the Defendant's motion and amended motion for judgment on the pleadings and affords the Plaintiff the opportunity replead in conformance with this order.

**FACTUAL BACKGROUND**

The Plaintiff ("Hernandez") began working for the Defendant ("Alcatel") on March 19, 1990. Def. Resp. to Mtn. to Remand, Exh. 1. Hernandez was employed in Alcatel's sales division and achieved the title of director of sales. *Id*. However, in December 2003, Hernandez received notice that his employment with Alcatel was being terminated because of a reduction in force. Pl. Reply to Mtn. to Remand, Exh. C. Alcatel advised Hernandez as follows:

> Your nine (9) week Notification Period will begin with the Notification Date indicated on your personalized Severance Statement. You will remain on active status and continue to receive your Regular Base Pay and all benefits through the end of this Notification Period, the End of Notification Date (the "EON Date"). The EON Date is designated on your personalized Severance Statement, and is your official Termination Date. Unless otherwise requested, you are to discontinue reporting to work at Alcatel, and cease performing any duties on behalf of Alcatel, effective on your Notification Date.
>
> In addition, we are prepared to offer you Severance Pay described in Exhibit A to the enclosed Confidential Severance Agreement and General Release (the "Agreement"). To obtain Severance Pay, you must sign the Agreement in the space provided. You are not permitted to make any changes to the Agreement. You may not sign the Agreement prior to the Notification Date indicated on your Severance Statement.

*Id*.

Hernandez subsequently received his severance statement. Hernandez was notified that his official notification period commenced on December 17, 2003 and expired on February 17, 2004, his EON Date. Def. Resp. to Mtn. to Remand, Exh. 1. Hernandez was further advised that he would receive "Salary Continuation pay" as well as all of his regular employee benefits during the nine (9) week Notification Period. *Id*. Hernandez was additionally informed that in order to receive his severance pay in the amount of $54,901.08, he was required to sign the Confidential Severance Agreement and General Release by January 7, 2004. *Id*. Hernandez was finally advised that he was

entitled to receive payment in the amount of $13,039.01 for 247 unused vacation hours. *Id.*

On January 7, 2004, Hernandez executed the Confidential Severance Agreement and General Release. *Id.* The Confidential Severance Agreement and General Release provides, in part, as follows:

> WHEREAS, Employee has been employed by Alcatel, but Employee's employment has been terminated as part of a reduction in force, effective as of the expiration of the Notification Period as defined in the attached Severance Statement, which is the End of Notification Date ("EON Date"); and
>
> WHEREAS, Alcatel and Employee desire to settle any and all claims relating to, arising from or in connection with, Employee's employment relationship with Alcatel, upon the terms and subject to the conditions set forth in this Agreement;
>
> NOW, THEREFORE, in consideration of the promises and the mutual covenants in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:
>
> 1. <u>Benefits</u>. Within ten (10) business days following the EON Date, Alcatel shall provide to Employee the Severance Pay set forth in the attached Exhibit A in accordance with the terms and conditions set forth in Exhibit A.
>
> 2. <u>General Release</u>. (a)(i) In consideration for the pay to be provided by Alcatel pursuant to Section 1 and the other promises of Alcatel contained in this Agreement, which Employee acknowledges that he / she is not otherwise entitled to, Employee (as more fully defined below) hereby fully, finally and forever releases and discharges the Alcatel parties (as defined below) from any and all Claims (as defined below).
>
> . . . . . . . . . . . . . . . . . . . . .
>
> 13. <u>Entire Agreement</u>. Employee declares that no promise, inducement, or agreement not expressed in this Agreement has been made to Employee in consideration for the promises of Employee contained in this Agreement. This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof, and any prior agreements relating to the subject matter hereof are superceded by this Agreement; provided, however, that if Employee is a party to any employment agreement of EPCPIA or other confidentiality or nondisclosure agreement with Alcatel, then the provisions of such agreement that, by their terms, continue in effect after the termination of Employee's employment

with Alcatel shall continue in effect in accordance with such terms. However, in no event will the Employee be entitled to a combination of severance payments or benefits set forth in both this and the employment agreements. This Agreement cannot be altered or amended unless done so in a written document signed by both Parties.

Def. Resp. to Mtn. to Remand, Exh. 1.

The Confidential Severance Agreement and General Release references Exhibit A, the Summary of the Benefits under the Alcatel USA, Inc. Severance Benefits Plan (the "Summary"). The Summary provides, in pertinent part, as follows:

> The Alcatel USA, Inc. Severance Benefits Plan (the "Severance Plan") has been established to provide ample notice and severance pay to an Employee terminated due to permanent layoff, reduction in force, facility closing, reorganization, or consolidation of operations. The provisions of the Severance Plan have been put into place to comply with both the spirit and the letter of the Worker Adjustment and Retraining Notification Act (the "WARN Act").
>
> The Severance Plan provides a combination of Salary Continuation, Health Care Continuation, and Outplacement Services. In addition, Severance Pay described in this summary are provided in consideration for Employee's signing and returning of the Confidential Severance Agreement and General Release (the "Agreement").
>
> *This Exhibit presents a summary of the benefits provided under the Severance Plan and certain other benefit plans sponsored by Alcatel USA, Inc. ("Alcatel"). Any questions, interpretations, or appeals are governed by the plan documents and shall be resolved by the Plan Administrator and Administration Committee.*
>
> . . . . . . . . . . . . . . . . . . . . . .
>
> **BENEFITS PROVIDED UNDER THE SEVERANCE PLAN**
>
> <u>Salary Continuation</u>: Employee will receive Employee's Regular Base Pay throughout the nine (9) week Notification Period. All regular deductions, contributions, and tax withholding will continue to apply to the Salary Continuation payment, unless otherwise noted.
>
> <u>Severance Payment Schedule</u>: In addition to the Salary Continuation payment described above, if an Employee signs and returns the Agreement and does not revoke signature according to the terms of the Agreement, Employee shall receive a

Severance Payment as described in the table below:

| Weeks of Regular Base Pay for Employees with 0 to 14 years of service | 1.5 Weeks of Regular Base Pay for every full year of service for Employees (see chart on last page), subject to the following minimums and maximums. |
|---|---|
| Weeks of Regular Base Pay for Employees with 15 or more years of service | (a) 1.5 Weeks of Regular Base Pay for every full year of service (for years 1 to 14) and (b) for year 15 and forward, 2 weeks for every full year of service for Employees (see chart on last page), subject to the following maximums. |
| Minimum Severance Payment | 26 Weeks of Regular Base Pay. |
| Maximum Severance Payment | 52 Weeks of Regular Base Pay. |

. . . . . . . . . . . . . . . . . . . . . .

Health Care Continuation: Employee will be eligible to continue to participate in Alcatel's group medical and dental plans throughout the Notification Period on the same basis as Employee was participating in such plans prior to the beginning of the Notification Period. Following Employee's EON Date, Employee and / or his eligible dependents may elect to continue to participate in these plans and receive these benefits, at Employee's or the eligible dependent's expense, as applicable, under the provisions of the Consolidate [sic] Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA") for up to an additional 18 months.

. . . . . . . . . . . . . . . . . . . . . .

Vacation Pay Out: An employee will be entitled to payment of any granted, unused vacation in accordance with the terms of Alcatel's vacation policy. . . . Employee's eligible vacation will be mailed to Employee in a lump-sum amount within ten (10) business days after the EON Date. . . .

Def. Resp. to Mtn. to Remand, Exh. 1.

Although Hernandez executed the Confidential Severance Agreement and General Release, Alcatel has not yet paid Hernandez his severance pay in the amount of $54,901.08 or his unused

vacation pay in the amount of $13,039.01. Pl. Orig. Pet., p. 2, ¶¶ 7-8. Accordingly, Hernandez brought suit against Alcatel in the 219th Judicial District Court of Collin County, Texas seeking damages for breach of contract. Alcatel subsequently removed Hernandez's lawsuit to this court on the basis of ERISA preemption. Hernandez then moved to remand his case to state court. In his motion to remand, Hernandez argues that he is merely seeking to recover liquidated damages arising from a breach of the Confidential Severance Agreement and General Release, not benefits under an ERISA plan.[1] In response, Alcatel argues that Hernandez is seeking to recover damages that are only available to him pursuant to Alcatel's written ERISA severance plan, The Alcatel USA, Inc. Severance Benefits Plan. Accordingly, the court must determine (1) whether Alcatel's severance plan is an employee benefit plan as defined by ERISA and (2) whether Hernandez's breach of contract claim relates to that plan and falls within ERISA's enforcement provision, and is therefore preempted by ERISA. *See Washington v. Electronic Data Systems Corp.*, 2003 WL 1233039, *2 (E.D. Tex. 2003).

## APPLICABLE STANDARD

The question of whether federal question jurisdiction exists is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only if a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar*, *Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because the plaintiff is the "master of the claim," he or she may bring or avoid bringing federal claims. *Id*. Thus, a plaintiff may rely solely on state law to avoid federal question

---

[1] Hernandez does not appear to dispute that the Severance Plan is governed by ERISA. Rather, Hernandez argues that the Conditional Severance Agreement and General Release is not governed by ERISA and that his claim is a simple breach of that agreement.

jurisdiction. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986).[2]

Three exceptions to the well-pleaded complaint rule exist. *Halfmann v. USAG Ins. Servs., Inc.*, 118 F. Supp. 2d 714, 717 (N.D. Tex. 2000). First, a state law claim may be totally preempted by federal law. *Id*. If complete preemption exists, removal is proper. *Id*. at 718. Second, removal is proper if a plaintiff's complaint includes or involves a substantial question of federal law. *Id*. at 721. Incidental federal issues, however, are insufficient. *Id*. Third, under the artful pleading doctrine, removal is proper if a plaintiff attempts in bad faith to disguise a federal claim as a state claim. *Id*. at 722.

## DISCUSSION AND ANALYSIS

### 1. ERISA standard

In order for this court to have subject matter jurisdiction over Hernandez's state law claim, the court must find that such claim is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*. The ERISA statute provides as follows:

> A civil action may be brought –
>
> (1) by a participant or beneficiary –
>
> > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Additionally, the ERISA statute provides as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .

---

[2] Thus, the defendant may not remove a case to federal court on the basis of a federal claim that the plaintiff could have asserted or on the basis of a federal defense that the defendant might assert. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).

29 U.S.C. § 1144(a).

"Thus, if a state law relates to an employee benefit plan, it is preempted by ERISA." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1292 (5th Cir. 1989). "Such recharacterization of state-law claims for benefits under covered plans is made necessary by the following corollary to the well-pleaded complaint rule: 'Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character.'" *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989)(citation omitted).

However, although an agreement to pay severance benefits may constitute an employee welfare benefit plan, "such an agreement is subject to ERISA's control only if it creates benefits requiring 'an ongoing administrative program to meet the employer's obligation.'" *Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617, 621 (5th Cir. 2002)(quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). "'The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation.'" *Id.*, quoting *Fort Halifax*, 482 U.S. at 12, 107 S.Ct. 2211.

### 2. *The Severance Plan*

"The decision whether a particular plan or program qualifies as an 'employee welfare benefit plan' under ERISA requires that the court determine whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan' established or maintained by an employer or employee organization intending to benefit employees or members." *Washington*, 2003 WL 1233039 at *2, citing *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). If a plan satisfies these criteria, it is an employee benefit plan under ERISA. *See id.* (citation omitted).

### A. Does a plan exist?[3]

As noted above, the court must initially determine whether a plan exists. *See Washington*, 2003 WL 1233039 at *2. "Ultimately, the determination of whether or not the arrangement is an 'employee welfare benefit plan' is generally a question of fact governed by a set of well established legal standards." *Id.*, citing *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449 (5th Cir. 1991).

"The [court] looks to see if there was a 'plan' by inquiring whether 'from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Id.* at *3, quoting *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir. 1990) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)). Hernandez argues that the Confidential Severance Agreement and General Release was intended only for him and was not established or maintained by an employer or employee organization for the benefit of employees. Hernandez further argues that the Confidential Severance Agreement and General Release was created solely for his benefit. Hernandez insists that he "is suing for a breach of a Confidential Severance Agreement and General Release, which is governed by the four corners of that contract without reference to an ERISA plan." Pl. Reply to Def. Resp. to Pl. Mtn. to Remand, p. 6, ¶ 12.

The court disagrees. The Confidential Severance Agreement and General Release specifically references Exhibit A, the Summary of the Benefits under the Alcatel USA, Inc. Severance Benefits Plan. The Summary, in turn, references Alcatel's Severance Plan. Hence, Hernandez's arguments that the Confidential Severance Agreement and General Release exists

---

[3]*See Washington*, 2003 WL 1233039 at *2.

separate and apart from Alcatel's Severance Plan lack merit.

The benefits provided by Alcatel's Severance Plan were described in the Summary of the Benefits under the Alcatel USA, Inc. Severance Benefits Plan as well as The Alcatel USA, Inc. Severance Benefits Plan, all of which were provided to Hernandez.[4] *See Washington*, 2003 WL 1233039 at *3. Alcatel's employees, including Hernandez, are the beneficiaries of the Severance Plan. *See id.* Further, Alcatel's general assets fund the Severance Plan. *See id.*; Def. Notice of Removal, p. 2, ¶ 3. Finally, the "Administration" section of the Severance Plan details the procedures for receiving benefits. *See id.*; Alcatel USA, Inc. Severance Benefits Plan, pp. 8-11, Art. 5. Based on the foregoing, the court concludes that a plan exists.

### B. Does the Severance Plan fall within the safe-harbor provision established by the Department of Labor?

"Next, the court must apply the safe-harbor provisions established by the Department of Labor regulations to determine whether the program was exempt from ERISA." *Washington*, 2003 WL 1233039 at *3, citing *McDonald v. Provident Indemn. Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir. 1995). The Department of Labor regulations state that the term "employee welfare benefit plan":

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1)   No contributions are made by an employer or employee organization;
>
> (2)   Participation in the program is completely voluntary for employees or members;

---

[4]Alcatel attached a copy of the 2004 Severance Plan to its response to Hernandez's motion to remand. Hernandez objects to the same in that a copy of the 2004 Severance Plan was not provided to him prior to his termination. Hernandez concedes, however, that Alcatel provided him with a copy of the 2003 Severance Plan prior to his termination. Without more, the court finds that Hernandez's objection should be overruled.

> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*Washington*, 2003 WL 1233039 at *3, quoting 29 C.F.R. § 2510.3-1(j). "If any one of the four factors set out in the regulations is present, the plan is not excluded from ERISA coverage by the safe-harbor provision." *Id*. Since the Severance Plan is funded through Alcatel's general assets, the Severance Plan is not excluded from ERISA coverage by the safe-harbor provision. *See id*.

### C.  Does the Severance Plan satisfy the primary elements of an ERISA "employee benefit plan"?

Finally, the court must determine whether the Severance Plan meets the criteria adopted by the Fifth Circuit for plans covered by ERISA. *See Washington*, 2003 WL 1233039 at *4. "Only those 'employee welfare benefit plans' that are 'established or maintained' by an employer for the 'purpose of providing certain benefits to its employees' are covered by ERISA." *Id*., quoting 29 U.S.C. § 1002(1). Accordingly, the "'two primary elements of an employee benefit plan [are]: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to the employee.'" *Id*., quoting *Meredith*, 980 F.2d at 355.

#### ESTABLISHED OR MAINTAINED

"The hallmark of an ERISA benefit plan is that [it] requires 'an ongoing administrative program to meet the employer's obligation.'" *Id*., quoting *Fort Halifax*, 482 U.S. at 11. Here, for every employee terminated due to permanent layoff, reduction in force, facility closing,

reorganization or consolidation of operations, Alcatel is required to evaluate that employee's eligibility for severance benefits and, if eligible, the amount of those benefits. *See id.* Although the Severance Plan provides each eligible employee with a lump-sum payment, the amount is determined for each employee's years of service. *See Olsen v. Atlantic Richfield Co.*, 1996 WL 739039, *2 (N.D. Tex. 1996) (severance plan requiring the execution of a general release of liability found to be an ERISA employee welfare benefit plan); The Alcatel USA, Inc. Severance Benefits Plan, p. 6, Article 4, § 4.3. The Severance Plan is not triggered by a one time event; rather, it is triggered by various events over an extended period of time. *See id.* Additionally, the Severance Plan is available to a variety of employees. *See id.* Further, the Severance Plan requires administration via a Plan Administrator. The Alcatel USA, Inc. Severance Benefits Plan, pp. 8-9, Article 5, §§ 5.1-5.3. Finally, the Severance Plan's appellate process includes an Appeals Committee charged with reviewing appeals from those in receipt of adverse benefit determinations. *See Washington*, 2003 WL 1233039 at *4; The Alcatel USA, Inc. Severance Benefits Plan, pp. 9-10, Article 5, § 5.4. The foregoing facts demonstrate an administrative scheme that constitutes the maintenance of an employee benefit plan. *See id.*

### INTENDED BENEFITS

"The second element of an ERISA plan is an intent to benefit employees." *Washington*, 2003 WL 1233039 at *4. "Here, the Severance Plan was clearly intended to benefit employees by offering them benefits at the time of termination." *Id*.

Based upon the foregoing, the court concludes that the Severance Plan is an employee benefit plan within the meaning of ERISA. The court now turns to whether Hernandez's breach of contract claim is preempted by ERISA.

### *3.  Preemption*

Alcatel argues that Hernandez's breach of contract claim is preempted by ERISA. "'In short, when beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA.'" *Washington*, 2003 WL 1233039 at *5, quoting *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 979 (5th Cir. 1991). Here, Hernandez's breach of contract claim arises from the alleged denial of severance pay and vacation pay as provided to terminated employees under the Severance Plan.[5] *See id.* Accordingly, Hernandez's breach of contract claim is preempted by ERISA.[6]

### **CONCLUSION**

Based on the foregoing, the court finds that Hernandez's state law breach of contract claim is preempted by ERISA. Therefore, Hernandez's motion to remand (docket entry #6) is **DENIED**. Because Hernandez's breach of contract claim is completely preempted by ERISA, Alcatel's motion for judgment on the pleadings (docket entry #10) and amended motion for judgment on the pleadings (docket entry #11) are **GRANTED**. *See id.* Hernandez shall have thirty (30) days from the date this order is entered to file an amended complaint that states a claim against Alcatel under ERISA. *See id.* If Hernandez fails to replead in accordance with this order, the court will dismiss this action with prejudice. *See id.*

IT IS SO ORDERED.

---

[5] Hernandez argues that his claim for unused vacation pay is not preempted by ERISA. However, as noted above, the Severance Plan provides for the recovery of vacation pay. Accordingly, the court finds that Hernandez's argument is without merit.

[6] Hernandez argues that conflict preemption is applicable to this action. The court disagrees and finds that Hernandez's argument lacks merit.

**SIGNED this the 4th day of September, 2006.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE